Supreme Court, Onondaga County, June, 1903. Unreported.

In the Matter of the Petition of ANDREW S. WHITE to Revoke the Liquor Tax Certificate of THEODORE HICKOK and ANO.

FRANK T. MILLER, Referee:

This proceeding is brought by Mr. Andrew S. White, as the duly authorized agent of Horace K. White, Andrew D. White and others, owners of the hotel property known as the "Empire House" in Syracuse, N. Y., under subdivision 2 of section 28 of the Liquor Tax Law of the State of New York, to revoke and cancel license No. 15,770 issued on the 29th day of December, 1902, to Theodore O. Hickok and Bartlett Smith, by the Treasurer of Onondaga county.

There were served upon the holders of this certificate, Messrs. Hickok and Smith, the County Treasurer of Onondaga county, and the State Commissioner of Excise, a petition duly verified by

Andrew S. White, the consent of the State Commissioner of Excise that action might be taken to revoke and cancel such license, and an order to show cause, duly made by Hon. William S. Andrews, Justice of the Supreme Court, why an order revoking and cancelling such liquor tax certificate should not be granted. Upon the return day of said order to show cause, the holders of such liquor tax certificate presented and filed a verified answer to said petition and the court subsequently ordered this reference for the purpose of taking the proofs in relation thereto, and that such referee report the evidence to this court with his opinion thereon. Pursuant to such order of the Court, various hearings were had, evidence and proofs taken and the following facts are found from the evidence.

## FACTS.

The Empire House property at the corner of West Genesee and North Salina streets is owned by Horace K. White, Andrew D. White, Clara Newbury and others; Andrew S. White, the petitioner in this proceeding, acting as the duly authorized agent in the management of the property. On or about January 23d, 1901, these owners leased this property to C. A. Whalen & Co., a copartnership composed of W. K. Niver, George J. Whalen and Charles A. Whalen of Syracuse, N. Y., and Herbert Collins of New York city; C. A. Whalen & Co. on January 25th, 1901, sublet to J. M. Andrews of Syracuse, N. Y., with the consent of the owners, the hotel portion of said premises. Thereafter Andrews sublet this portion of the premises to one E. T. Talbot, with the written consent of Whalen & Co. to such subletting endorsed upon the lease. The defendants Theodore O. Hickok and Bartlett Smith are and since November 4th, 1902, have been copartners in business, under the name of "Hickok & Smith," engaged in conducting a hotel in the Empire House, the possession of which said property is held by them, and has been so held by them since November 4th, 1902, under an agreement in writing made between them and James M. Andrews. This possession, so far as the evidence in the case is concerned, has been quiet and peaceable, and no attempted eviction appears to have taken place either on the part of the owners or Whalen & Co.

On November 5th, 1902, the defendants obtained from the county treasurer, and prepared an application for a liquor tax certificate for the purpose of selling liquor in the hotel property.

The defendant, Bartlett Smith, called upon the county treasurer for the application blank and at this time had a conversation with William Landon, the deputy county treasurer, in which he informed Smith that it would be necessary for him to procure the consent in writing of the owner of the premises that such liquor tax certificate issue and that such consent must be filed with the application. That on the same day, Smith, in company with one James T. Ellis, called at the residence of Horace K. White, who is one of the owners of said premises, and presented to him this application for the Liquor Tax Certificate, and the "Owners' Consent" in blank form attached thereto, which he requested said White to execute. There seems to be some conflict as to the exact conversation that took place at Mr. White's residence between Messrs. White and Smith in the presence of Mr. Ellis. However, Mr. White did not then sign the consent, but expressed himself as believing that there would be no objection to the signing of the consent, and so informed Smith that he would have the leases covering the Empire House property examined, and if there were no provisions in the leases which would prevent, he would have the consent properly executed. Shortly after this conversation occurred, Mr. White and Mr. Ellis met in the street, when White requested that Ellis say to Mr. Smith, evidently referring to the conversation at Mr. White's residence, "That he, Mr. White, thought the matter would be all right."

The leases of the hotel property were in the possession of H. K. White at his office in the White Memorial Building. Joseph Barrett, who is Mr. White's clerk, at the request of Mr. White, examined the leases and informed him that he found nothing in the leases which would prevent Smith from getting the owners' consent to obtain a liquor tax certificate. White then requested Barrett to tell A. S. White that he (H. K. White) had given his consent, and if everything was all right, to sign the paper.

On November 6th, 1902, Smith called at H. K. White's office for this consent. Shortly after Smith came to the office, Barrett, in company with Smith, carried the blank "Owners' Consent" to the office of A. S. White, the son of H. K. White, and who is also the agent of this property, and told A. S. White that H. K. White had given his consent, and that he, A. S. White, would sign the paper. A. S. White then examined at least one of the leases himself and thereupon signed, acknowledged and delivered the said consent to Smith. Although the defendants Hickok and

Smith received the consent properly executed on November 6th, they did not present it to the county treasurer until the 8th of November, thus retaining it in their possession two full days. This circumstance, connected with the other facts of the case, causes me to conclude that there was no intentional fraud on the part of Smith. On that day, the defendants duly filed with the Treasurer of Onondaga county, a statement or application, signed and sworn to by the defendants upon the blank form furnished by the county treasurer, which said statement contained all the facts required by chapter 112 of the Laws of 1896, known as the " Liquor Tax Law," and the acts supplemental thereto and amendatory thereof, and at the same time they filed with such county treasurer a bond to the People of the State of New York, in the penal sum of $1,000, which in all its terms and in the manner of its execution, complied with the provisions of said law, and they also at the same time delivered to the county treasurer, a certified check for the sum of $250.00, being the tax assessed under said liquor tax law for the certificate applied for, and the defendants also filed with the county treasurer, simultaneously with said application, bond and check, the consent in writing above mentioned that such traffic in liquor be carried on in said premises, to wit: the Empire House, which said consent was properly executed by Andrew S. White, the duly authorized agent of the owners of said premises, and acknowledged as are deeds entitled to be recorded. The legal tender of the certified check delivered to the county treasurer has not been attacked in this proceeding. That defendants delivered all of said papers executed in due form, to said county treasurer on said 8th day of November at about 11:00 o'clock a. m.; that said county treasurer thereupon examined the papers and had found them correct; that thereafter and at 11:27 a. m. and before he had actually issued or delivered the liquor tax certificate applied for, to the defendants, the petitioner herein caused to be delivered to the county treasurer, a notice of which the following is a copy:

" William S. Landon,
    Deputy County Treasurer,
        Onondaga County, N. Y.
  Dear Sir: —
  Whereas, on the 6th day of November, duly authorized permission and consent was executed by me to the taking out of a liquor

license and certificate by Hickok and Smith in the premises known as the " Empire House " in the city of Syracuse, New York, and

Whereas, I desire to reconsider said consent, now, therefore,

Take notice, that until further instructions such consent is revoked by the landlord of said premises through me, as duly authorized agent.

<div align="right">ANDREW S. WHITE, <em>Agent.</em> "</div>

That said defendants and said county treasurer had received no notice of the intention on the part of the owners of said premises, or the petitioner herein, to revoke or reconsider such consent until this notice, which was received after the application, consent, bond and check had been duly filed with and presented to the county treasurer. That by reason of the filing of said notice, the county treasurer refused to issue said liquor tax certificate, but retained said application, consent and bond, which had been filed by the defendants, together with the certified check for $250.00. Subsequently and on November 19th, 1902, the defendants commenced a proceeding by the service upon the county treasurer of a petition, order and writ of certiorari to compel said county treasurer to issue said liquor tax certificate. That in this proceeding, the Supreme Court granted an order directing the county treasurer to issue said certificate, which was thereafter and on December 29th, 1902, duly issued by the treasurer and delivered to the defendants.

The lease of said hotel premises from the owners, Horace K. White, and others, to Whelan & Co., provides among other things as follows : " That in case said tenant shall transfer this lease or relet said premises herein described or any part thereof, without the written consent of the landlords endorsed hereon, said lease shall thereby become void at the option of said landlords and said landlords may reenter and take possession of said premises."

The lease of said hotel premises from Whelan & Co., to Andrews, provides among other things as follows : " That in case said tenant shall transfer this lease or relet said premises herein described or any part thereof, without the written consent of the landlord endorsed thereon, said lease shall thereby become void at the option of said landlord, and said landlord may reenter and take possession of said premises." It also further provides as follows : "And he (said Andrews) further agrees that he will execute and deliver unto the party of the first part, provided any

part of said premises be sublet by him, or used for the sale of liquor and intoxicating drinks, a bond in the sum of $6,000.00 against the fines and penalties of the law of the State of New York, commonly known as the " Civil Damage Act," said bond to be delivered to the party of the first part (Whelan & Co.), and to be drawn to protect it and all of the members of said copart-nership from all fines and penalties, costs, expenses and fees required in defending any suit arising under said law and during the term of said lease."

That pursuant to the provisions of said lease of Whelan & Co. to Andrews, said Andrews, before the defendants commenced the traffic in liquor under said liquor tax certificate, executed and delivered to C. A. Whelan & Co., a bond in the sum of $6,000 as required by the terms of said lease.

There being some little conflict in the evidence of Smith and A. S. White as to the conversation which took place at Mr. White's office upon the occasion of his signing the " Owners' Consent," and this conversation being vital to the case, I now call attention to the revocation, pleadings and the evidence of Mr. White.

On November 20th, 1902, Andrew S. White caused to be filed with the county treasurer, an amplified revocation, properly verified, wherein he asserts: " That this consent was granted upon the statement of the applicants for such liquor tax certificate, Hickok and Smith, that they were the sub-lessees of the said Empire House property, from the tenants of Andrew D. and Horace K. White and others." Again Mr. White alleges in the petition in this proceeding the same facts are set forth in the amplified revocation, which he also therein claims are the false statements of Mr. Smith, upon which he relied when he granted his consent for the liquor tax certificate. In his evidence, Mr. White testified, in addition to the statements aforesaid, which are set forth in the petition and revocation: That Mr. Smith also represented to him that Whelan & Co. had given their consent that a liquor tax certificate issue. Inasmuch as this additional statement did not conform to the facts set forth in the petition and revocation and is foreign to the false statement which is alleged to have misled the petitioner, there is some question of the admissibility of the statement in evidence, but upon the trial there was no objection interposed to this evidence. Taking into consideration all of the evidence in the case and the apparent fair-

ness of Mr. Smith, there is no theory upon which I can find that Mr. White was misled by the false and fraudulent representations of Mr. Smith. As

CONCLUSION OF FACT.

I find as follows:

*First.* That none of the material statements contained in the application filed by Messrs. Hickok & Smith with the county treasurer, as aforesaid, were false.

*Second.* That the defendants practiced no fraud upon the owners of said premises, nor upon Andrew S. White, the duly authorized agent of said owners, nor upon the county treasurer of Onondaga county, and that the giving of said consent was not induced by any fraud upon the part of the defendants.

*Third.* That the said consent was not revoked before the same was filed with and acted upon by the county treasurer of Onondaga county.

*Fourth.* That when said notice hereinbefore set forth was filed with the county treasurer the defendants were entitled to the liquor tax certificate sought to be cancelled in this proceeding.

*Fifth.* That before the defendants commenced the traffic in liquor under said liquor tax certificate, James M. Andrews executed and delivered to C. A. Whelan & Co., a bond in the sum of $6,000 protecting them against the fines and penalties of the Civil Damage Act, as required by the terms of the lease from C. A. Whelan & Co., to said J. M. Andrews.

*Sixth.* That there is no proof before me that the owners of the hotel property, Horace K. White and others, have ever elected that their lease to C. A. Whelan & Co., is void, because of the transfer of said premises to the defendants, Hickok & Smith, nor have they re-entered or taken possession of said premises.

*Seventh.* That the sub-letting of said premises by C. A. Whalen & Co. to J. M. Andrews was with the consent of the owners of said property, and that there is no proof before me that C. A. Whalen & Co. have elected that their lease of said Empire House, to J. M. Andrews is void, because of the transfer from said Andrews to the defendants, Hickok & Smith, nor have C. A. Whalen & Co. re-entered or taken possession of said premises.

*Eighth.* That the defendants, Hickok and Smith are now and have been since November 4th, 1902, in possession of the Empire Hotel property.

## LAW.

Having arrived at the conclusion that the application for the liquor tax certificate in proper form with the bond and consent, were filed with the treasurer, we now come to the question whether this filing and the acts on the part of the treasurer in the inspection of these papers, were sufficient to invest the treasurer with an irrevocable jurisdiction of the owner's consent. As to the affirmative of this proposition there can be no doubt.

The theory of the old law giving the Department of Excise discretion in the issuance of liquor tax certificates, has been superseded by the present Liquor Tax Law. Formerly, the dealer was obliged to bring himself within the good graces of the excise commissioner. His acts legalized the traffic in liquors by those only upon whom he smiled. The public were then at his mercy, but time has again healed the wound. From the thorny bush of the old system, sprang the blossom of the statutory law in which is found a complete revolution. Now, the prerequisite to being made a liquor tax dealer depends simply upon a compliance with the statutory requirements by the applicant. The certificate does not of itself, in any manner, legalize the traffic in liquor by its holder. It serves only as a notice to the public that certain specified preliminary duties have been performed. It is a simple receipt and does not serve as a protection to the holder for future unlawful acts, nor does it foreclose any citizen the right to attack the legality or truth of the statements in the original application. The duty of the present officers is that of a simple inspection of the application, bond and consents, and also to attend to the collection of the license fee. Even in the performance of this duty, there lies no discretionary power in the officer to accept or reject the application. The office is purely ministerial and he issues the certificate as a matter of course. The application, as presented, must be accepted by him as true and his inspection of the papers presented to him deals only with the question as to whether or not they are proper in form and comply with the provisions of the statute. Yet, in the performance of this duty, it may properly be said that he serves the applicant, for were he to decide that an application were improper in form, and that there was not a compliance with the provisions of the statute, where in reality a sufficient compliance with the statute existed, such applicant would, notwithstanding his decision, be entitled to a certificate.

Although an application contains untruthful statements, the officer is obliged to issue the certificate while the applicant subjects himself to the penalties of the law.

In this case, the deputy county treasurer testified regarding the presentation and filing of the application, bond and consent, and as to the action taken thereon by himself, as follows:

" The application was presented to me in proper form for the issuance of a certificate on November 8th, 1902, at 11:20 a. m."

"At 11:20 a. m., Mr. Smith presented the bond and application with the necessary consent for a liquor tax certificate, accompanied by a certified check for $250.00. I was examining those papers as to their correctness, and had found them correct when Mr. Bond came with the plaintiff's Exhibit A (the notice of revocation). That occurred at 11:27 a. m., according to the time marked."

" When Mr. Bond came in with that paper he said to me that he wished to present that paper and to revoke Mr. Andrew S. White s consent as owner." I told Mr. Smith that I would mark the time he presented his papers in correct form, at 11:20 on the certificate, and give him a receipt for his money. I also marked the time the revocation was received at 11:27."

" Q. Had you prepared all of these papers upon which the certificate was finally ordered? A. I had with the exception of the consent of the owner."

From this evidence, it is very clear to me that the application, bond and consent were not only presented to and filed with the county treasurer, but were also duly acted upon by him before the notice of revocation was served. All that remained to be done could have been accomplished as well by a machine or stamp, as by a person.

It is a well known fact that it has become customary in large cities where hundreds of applications come into the office of the treasurer upon the same day, for the treasurer to issue to the dealer an ordinary receipt for his money, under which he carries on the business the same as after the certificate is actually issued. If, therefore, it were to be held that the delivery, only, of the license was to preclude the owner the right to revoke his consent, then in those cases where the license is not delivered for several weeks after the application is presented, serious damage would result.

In the *Matter of Adriance* which is reported in 59 App. Div. at

page 440, the facts show that the applicant procured the proper signatures and retained them in his possession without presentation to the county treasurer for several months, during this time, and after he had obtained the proper and requisite signatures of the owners of the buildings, he made certain repairs preparatory to opening his saloon. Prior to the filing of the application, bond and consents by the applicants, the owner of two adjacent dwellings served upon the county treasurer a revocation in writing of her consent previously given the applicant, that a liquor tax certificate might be issued. The county treasurer issued the certificate and proceedings were instituted to procure the revocation of such certificate on the ground that at the time the appellant presented his application, he did not have the legal consent of two-thirds of the owners of the buildings occupied as dwellings. The consent of Maria L. Young, which had been revoked by her written notice served upon the treasurer, was a necessary consent to complete the statutory requirement.

The sole question presented is whether or not the owner of a building, occupied exclusively as a dwelling, situated within two hundred feet of a place where it is proposed to carry on the business of trafficking in liquors, who without any consideration therefor gives his consent that traffic in liquors be carried on in such place, as provided by the Liquor Tax Law, may revoke and cancel such consent at any time before it has been filed with, presented to or in any manner acted upon by the officer to whom application is made for a certificate authorizing such traffic. The court held in this case that a consent to the use of premises for the purpose of trafficking in liquors, executed under the Liquor Tax Law, without consideration, may be revoked at any time, before it is presented to or acted upon by the county treasurer.

McLENNAN, Judge, in writing the prevailing opinion in the case, says:

" The consent of Maria L. Young was among the last obtained from the owners of the building and if he had then presented his application, which was at that time filled out and verified, with such consents to the county treasurer, and a certificate had been issued to him, concededly no effective revocation of consent could have been made."

" If, however, Maria L. Young has a right to revoke her consent before it was presented to the county treasurer, it is of no consequence that the applicant thereby sustained damage. The state-

ment was true when it was made, but it was not true when it was presented to the treasurer for his official action, to his knowledge."

" The precise question involved upon this appeal, so far as we have been able to discover, has not been passed upon by the courts of this State, but the revocability of consents affecting a variety of business enterprises other than that of trafficking in liquors, has been repeatedly considered, and the rule has been invariably adopted that such consents, if given without consideration, unless it is otherwise provided by statute, may be revoked by the person giving them at any time before they are presented to, or acted upon by the officer to whom they are directed, and whose action may be influenced or controlled thereby. We conceive. of no principle, which would justify a holding that a mere consent, given without consideration, directed to a public officer, and which is to be made the basis of this official action, should be held to be irrevocable before it is presented to such officer or acted upon by him."

The only inference that can be drawn from this decision is that if the consent has been filed with, presented to or in any manner acted upon by the officer, then it cannot be revoked.

The court, in its prevailing opinion, cites with approval, *Orcutt v. Reingardt,* reported in 46 N. J. Law at page 337, where it is held that:

"After the recommendation for a license has been presented to the Excise Board, and jurisdiction has been acquired, a signer, whose name has not been procured by fraud, cannot, without the consent of the board, withdraw his name and divest the board of jurisdiction."

The consent in this case having been actually filed with the county treasurer and examined and passed upon by him, could not be revoked unless it had been procured by fraud.

The further question to be considered in the case is whether or not the defendants, Hickok and Smith, are sub-lessees of the Empire House property, and in legal possession thereof. Although I do not believe that this question comes properly in the province of this reference, yet I am inclined to hold that the defendants are sub-lessees of the hotel property.

The leases from the White estate to Whelan & Co., and from Whelan & Co. to J. M. Andrews, provide that in case a transfer of the lease of the premises should be made without the consent

of the lessors, the lease should thereby become void at the option of the landlord and the landlord may reenter and take possession of said premises. Neither the owners of the property nor Whelan & Co. have ever exercised this option.

The evidence shows that the White estate leased the hotel property to Whelan & Co., they in turn sublet the hotel property to J. M. Andrews, with the consent of the White estate, and Andrews obtained the consent of Whelan & Co. to sublet to E. T. Talbot and this consent was endorsed upon the lease. The transfer to Hickok and Smith is, therefore, doubly good, (1) because the landlord has not exercised his option to declare it invalid; (2) because the landlord has previously consented to the transfer to Talbot. There having been a waiver of this condition in the one instance, renders the condition null and void.

The law on this point is stated by McAdam thus: "A condition in a lease that the lessee or his assignee shall not alien without special license of the lessor is determined by a license to alien, and no subsequent alienation is a breach of the condition, nor does it give a right of entry to the lessor." (McAdam on Landlord and Tenant, [3d ed.], Vol. 1, page 795.)

In *Murray* v. *Harway*, reported in 56 N. Y. at page 337, the court holds: " That a condition against an assignment once dispensed with, is dispensed with forever, and where a lease contains a covenant on the part of the lessee not to assign, with a forfeiture of the lease in case of breach, acceptance of rent by the lessor, accruing after an assignment, with knowledge thereof is a waiver of the forfeiture, so that the assignee can thereafter assign and transfer a good title to the lease."

For the reasons herein assigned, I believe that the defendants were in lawful possession of the premises.

### CONCLUSIONS OF LAW.

I find as follows:

. *First.* That on the 8th day of November, 1902, the defendants had complied with all the provisions of the Liquor Tax Law, entitling them to a liquor tax certificate to traffic in liquor in the Empire House.

*Second.* That these defendants, Hickok and Smith, became the legal and rightful owners and holders of liquor tax certificate No. 15,770, issued to them on the 29th day of December, 1902, and as

such, were legally and rightfully entitled to. traffic in liquors thereunder until the expiration of such certificate.

*Third.* That the liquor tax certificate No. 15,770 should not be cancelled or revoked in this proceeding.

That the petition should be denied and this proceeding dis- missed with costs in favor of the defendants.

<div align="right">

FRANK T. MILLER,

*Referee.*